J. S04034/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  L.N.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  C.D. | : | No. 1629 MDA 2017 |

Appeal from the Decree, September 21, 2017,
in the Court of Common Pleas of Lancaster County
Orphans' Court Division at No. 1589-2017

BEFORE:  SHOGAN, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 20, 2018**

C.D. ("Father") appeals from the decree dated September 21, 2017,[1] in the Court of Common Pleas of Lancaster County, granting the petition of Lancaster County Children and Youth Social Service Agency (the "Agency") and involuntarily terminating his parental rights to his minor, dependent child, L.N.D. (the "Child"), a female born in August of 2015, pursuant to the

---

[1] While the docket reflects a docket date of September 21, 2017, and the decree indicates copies were sent, there is no notation on the docket that notice was given and that the order was entered for purposes of Pa.R.C.P. 236(b).  ***See Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").  ***See also*** Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)".).  While we consider the matter on the merits, we caution the Lancaster County Prothonotary's Office as to compliance with the rules with regard to the entry of orders.

J. S04034/18

Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).[2, 3]  After review,

we affirm.

The trial court summarized the relevant procedural and/or factual

history as follows:

Procedural History

On March 30, 2016, the [Agency] filed a
Petition for Temporary Custody of [Child].  A Shelter
Care Order was entered following a hearing on
March 31, 2016.  Father failed to appear for the
Shelter Care Hearing despite receiving notice.
Mother appeared but waived the Shelter Care
Hearing without admitting any allegations.  Following
a hearing on April 14, 2016, the [c]ourt adjudicated
the child dependent and approved a child
permanency plan with the goal of return to parents
and a concurrent placement goal of adoption.
Mother attended the Adjudication and Disposition
Hearing but Father did not.  On July 20, 2017, the
Agency petitioned to terminate the parental rights of
[Father] and [Mother] to [Child] pursuant to
23 Pa.C.S.A. 2511(a)(1), (2), (5), and (8).  A
hearing on the termination petition was held on

---

[2] By the same decree, the trial court additionally involuntarily terminated the
parental rights of Child's mother, B.N.M. ("Mother"), pursuant to
23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8).  Mother filed a separate appeal
addressed by separate Memorandum at Superior Court Docket No. 1572
MDA 2017.

[3] At the time of Child's birth, Mother was married to N.M.
("presumptive father").  Presumptive father's parental rights were
terminated on August 24, 2017.  (Notes of testimony, 9/21/17 at 62-63,
107; decree, 8/24/17.)  Notably, paternity testing established Father's
paternity in June 2016.  (Notes of testimony, 9/21/17 at 107.)

September 21, 2017[4, 5] and the [c]ourt issued a decree involuntarily terminating Mother's and Father's rights to L.N.D.[6]  Mother and Father, on October 13, 2017, and October 23, 2017, respectively, filed a Notice of Appeal to the Superior Court of Pennsylvania of the September 21, 2017 Orphans' Court Order terminating their parental rights.

Factual History

The Agency became involved with Mother and Father since the birth of Child in August of 2015.  Due to the baby's low birth weight and signs of withdrawal symptoms due to morphine and other medications Mother was taking during her pregnancy, Child remained in the neonatal care unit several weeks following her birth.  The Agency attempted to avoid placement of the Child but Mother and Father did not participate in random drug

---

[4] The Agency presented the testimony of Jonathan Gransee, Psy.D., clinical psychologist, who performed a psychological evaluation of Mother and a parenting capacity evaluation of Father; and Caitlin Hoover, Agency caseworker.  The Agency additionally offered Exhibits P-1 through P-5, which, upon review, were never admitted on the record.

Notably, Mother, who was represented by counsel, was not present due to alleged health issues, and no evidence was presented on her behalf.  Father, also represented by counsel, was present but did not testify or present any evidence on his behalf.

[5] Guardian **ad litem**, Cynthia L. Garman, Esq., also participated in these proceedings.  Ms. Garman argued and filed a brief in support of the termination of parental rights.  A Court Appointed Special Advocate ("CASA") was additionally appointed.  The record reveals that the CASA recommended Child remain where placed and also favored termination of parental rights. (Notes of testimony, 9/21/17 at 110.)  We observe that this report was not marked and admitted as part of the record.

[6] While the decree only indicates termination pursuant to Subsections (a)(1), (2), (5), and (8), not only was evidence presented with regard to Subsection (b), the court addressed Subsection (b) both on the record and in its Rule 1925(a) opinion.  We therefore address Subsection (b) as well.

> screens and violated the safety plan. The Agency
> took custody of the Child on March 30, 201[6]. At
> the time of the termination hearing, Mother and
> Father failed to make significant progress and,
> neither parent had completed any goal on their
> reunification plans.

Trial court opinion, 11/3/17 at 1-2.

On appeal, Father raises the following issue for our review:

> I.     Whether the court erred in terminating Father's
>        parental rights?

Father's brief at 11.[7]

In matters involving involuntary termination of parental rights, our

standard of review is as follows:

> The standard of review in termination of parental
> rights cases requires appellate courts "to accept the
> findings of fact and credibility determinations of the
> trial court if they are supported by the record."
> ***In re Adoption of S.P.***, 47 A.3d 817, 826 (Pa.
> 2012). "If the factual findings are supported,
> appellate courts review to determine if the trial court
> made an error of law or abused its discretion." ***Id.***

---

[7] We observe that Father states his issues somewhat differently than in his Rule 1925(b) statement, but find that he preserved a broad challenge to the sufficiency of the evidence as to termination with his Rule 1925(b) statement and statement of questions involved. However, as we read the argument section of Father's brief, although not explicitly stated, his argument appears focused on Subsection (a)(1). (Father's brief at 15-20.) While not specified, Father references the law related to this subsection only. (***Id.*** at 15-16.) We, therefore, find that Father waived any challenge with regard to Subsections (a)(2), (5), (8), and (b). ***See In re W.H.***, 25 A.3d 330, 339 n.3 (Pa.Super. 2011), ***appeal denied***, 24 A.3d 364 (Pa. 2011), quoting ***In re A.C.***, 991 A.2d 884, 897 (Pa.Super. 2010) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); ***see also In re M.Z.T.M.W.***, 163 A.3d 462, 465-466 (Pa.Super. 2017).

"[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill_will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis

> pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re C.S.*, 761 A.2d at 1201, quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998). In this case, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's termination decree pursuant to Subsections 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has

refused or failed to perform parental duties.

. . . .

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first examine the court's termination of Father's parental rights under Section 2511(a)(1). We have explained this court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
> > Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental

> rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

As it relates to the crucial six-month period prior to the filing of the petition, this court has instructed:

> [I]t is the six months immediately preceding the filing of the petition that [are] most critical to our analysis. However, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provisions, but instead consider the individual circumstances of each case.

*In re D.J.S.*, 737 A.2d 283, 286 (Pa.Super. 1999) (citations omitted). This requires the court to "examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citation omitted).

Further, we have stated:

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

*In re Z.P.*, 994 A.2d at 1119 (citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa.Super 2008) (*en banc*).

Regarding the definition of "parental duties," this court has stated:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent

must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d at 855 (internal citations omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012), discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975).

Instantly, in finding grounds for termination pursuant to Subsection (a), the trial court stated as follows:

Father has failed to achieve his objectives. As part of achieving his mental health objective, Father needed to participate in a parenting capacity evaluation. Dr. Gransee opined that Father does not have the capacity to parent but had the possibility of growing in capacity with proper support and guidance. To gain capacity Father was to attend outpatient therapy and anger management classes, receive drug and alcohol treatment (intensive outpatient) and medication, as well as be seen by a personalized parent trainer. Father's therapist reported to the Agency that Father does attend his therapy appointments when he manages to remain sober and not be incarcerated. Recently, Father was listed as a missing person for three weeks. During this time he did not attend his therapy appointments nor did he take his psychiatric medicine.

Father was [sic] not completed his drug and alcohol objective. On August 24, 2017, the [c]ourt ordered Father to submit to an unscheduled drug screen. Father did not submit to the screen at that time. Instead, he returned to the agency five (5) hours later and produced an invalid result.

Father has not completed his domestic violence objective. He has not attend [sic] a domestic violence program nor anger management therapy.

Regarding his crime free objective, Father is currently on probation. Recently he missed his probation officer appointment.

Father has not started his parenting objective. He needs positive recommendations from his mental health, drug and alcohol, and domestic violence therapy providers to be recommended for the parent educator program. These recommendations have not been received by the Agency.

Father's income, housing and commitment objectives are not complete. Father is currently unemployed and resides with his mother and brother in a two-bedroom apartment. This residence is not large enough to be deemed appropriate for Child to reside in. Since June 1, 2017, Father attended six (6) out of a possible fourteen (14) visits with Child.

Trial court opinion, 11/3/17 at 6-7 (citations to record omitted).

Father, however, asserts that he was unable to commence work on his plan until January 2017, upon release from prison. At that time, Father indicates that he made efforts at completion of his plan. (Father's brief at 16, 18-19.) Father further notes that Dr. Gransee indicated that, while Father did not possess current parenting capacity, he may attain such capacity in the future. (**Id.** at 18.) Father argues that, despite his efforts

and Dr. Gransee's recommendation of six months prior to reevaluation, the Agency filed a petition to terminate parental rights after only four months, as opposed to giving him more time. (*Id.* at 19.) Father also suggests that any decline in his progress then came shortly after notification of the Agency's intent to proceed with termination. (*Id.* at 19-20.) Father states:

> Since his release from prison in January 2017 until the filing of the Petition to Terminate Parental Rights[,] Father demonstrated a commitment to work on the Child Permanency Plan. In failing to follow the recommendations of the Parenting Capacity Assessment, permitting Father a full six months with a reevaluation, the Agency failed to establish by clear and convincing evidence that Father's parental rights should be terminated.

*Id.* at 20. We disagree.

A review of the record supports the trial court's termination pursuant to Subsection (a)(1). The evidence establishes that Father failed to make efforts toward the requirements of his child permanency plan and parenting Child and failed to maintain contact with Child until after release from incarceration. Despite progress thereafter, Father failed to complete his plan objectives and failed to maintain consistent contact with Child. Agency caseworker, Caitlin Hoover, recounted Father's objectives as: to remain free from drugs and the misuse of alcohol, to improve mental health functioning to the extent that he can care for his child, to remain free of domestic violence, to remain crime free, to learn and use good parenting skills, to be financially stable in order to provide for himself and his child, to obtain and

maintain a home free and clear of hazards for himself and his child, and to maintain an ongoing commitment to his child. (Notes of testimony, 9/21/17 at 76, 78, 80, 82-84.) Ms. Hoover testified that, despite the establishment of paternity in June 2016, Father did not begin to engage in and work on his plan objectives until January 2017, upon release from prison.[8] (*Id.* at 99, 107.) Further, Father's first visit with Child was not until January 30, 2017. (*Id.* at 84.) Significantly, neither occurred until ten months after Child's placement. Father did not present evidence of any efforts toward parenting Child and completing his objectives or contact prior to January 2017. Ms. Hoover's testimony further indicates that, despite some progress and Dr. Gransee's recognition of potential, Father failed to complete his objectives thereafter. (*Id.* at 76-85.) Moreover, evidence was presented that Father failed to maintain consistent contact with Child. Importantly, since June 1, 2017, Father missed eight of fourteen visits with Child. (*Id.* at 84-85, 106.)

With his position, Father suggests that Child delay stability and permanency while Father seeks to complete his plan requirements and attain parental capacity. This is both speculative and unacceptable. As this court

---

[8] As related by Ms. Hoover, Father "was incarcerated on two separate occasions and then in addition . . . had reported some shame and embarrassment with the case being open." (Notes of testimony, 9/21/17 at 107.) While the exact dates are not clear from the certified record, the Agency's brief suggests that Father was incarcerated from June 20, 2016 to July 21, 2016, followed by a 28-day rehabilitation program, and October 26, 2016 to January 17, 2017. (Agency brief at 4-5.)

has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa.Super. 2006). Child is in a stable and secure environment, where she had been placed for approximately a year and a half at the time of the hearing, almost her entire life. Thus, as the trial court's termination pursuant to Section 2511(a)(1) is supported by competent, clear and convincing evidence in the record, we find no abuse of discretion. *See In re T.S.M.*, 71 A.3d at 267; *In re Adoption of T.B.B.,* 835 A.2d at 394.

As noted above, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a) before assessing the determination under Section 2511(b). *In re B.L.W.*, 843 A.2d at 384. We, therefore, need not address any further subsection of Section 2511(a) and turn to whether termination was proper under Section 2511(b). As noted, Father failed to preserve a challenge to Subsection (b). However, had Father preserved a claim as to Subsection (b), we would find such a claim lacked merit.

As to Section 2511(b), our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b).

- 14 -

> The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the

> love, comfort, security, and stability the
> child might have with the foster parent.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015), quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and

citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that

courts considering termination must also consider whether the children are

in a pre-adoptive home and whether they have a bond with their foster

parents." *T.S.M.*, *supra* at 268. The court directed that, in weighing the

bond considerations pursuant to Section 2511(b), "courts must keep the

ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court

observed, "[c]hildren are young for a scant number of years, and we have

an obligation to see to their healthy development quickly. When courts fail

. . . the result, all too often, is catastrophically maladjusted children." *Id.*

In determining that termination of Father's parental rights favored the

Child's needs and welfare, the court reasoned as follows:

> The Child's best interest is served by her
> remaining in foster care and being adopted. She has
> been in care for eighteen (18) months, since
> seven (7) months of age. The [c]ourt is convinced
> that the parents will not resolve their significant
> issues in a reasonable amount of time. Child is
> thriving in a loving and healthy home which is a
> potentially permanent resource. She has clearly
> bonded with the resource parents, and the other
> child in the home. By now, any bonding with parents
> is very limited at best. Child cannot wait for an
> indefinite period of time for the stability and care of
> a permanent family in the hope that her biological

> parents will drastically change their behavior and accomplish their goals. She is doing well and has spent more time with their current family than with anyone else. It is clear to this [c]ourt that the best interest of Child is served by terminating the rights of the parents and having her being adopted. The [CASA] and the Guardian *ad litem* support the termination of parental rights.

Trial court opinion, 11/3/17 at 7-8 (citations to record omitted). We agree.

Upon review, we again discern no abuse of discretion. The record supports the trial court's finding that Child's developmental, physical, and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). There was sufficient evidence to allow the trial court to make a determination of Child's needs and welfare, and as to the existence of a lack of a bond between Father and Child that, if severed, would not have a detrimental impact on her.

While Ms. Hoover testified that Father's visits with Child went well after Child became comfortable with him (notes of testimony, 9/21/17 at 84), she confirmed that Father's visitation became inconsistent after June 1, 2017, missing eight of fourteen visits. (*Id.* at 84-85). Moreover, Child was in the same pre-adoptive home since placement and was doing well and bonded with her resource family. (*Id.* at 85-86.) Ms. Hoover offered that Child "has developed a close relationship and attachment with her resource parents and their adopted daughter. [Child] also enjoys playing with resource parents' two dogs." (*Id.* at 86.) As such, Ms. Hoover opined that it was in Child's best interests to terminate parental rights. She stated:

> The [Agency] believes that termination of parental rights would be in Child's best interest so that she may be adopted and have a stable permanent home. Prolonging this child in foster care and not allowing her stability and permanency in her life would cause more harm than termination of parental rights.

*Id.* It was noted on the record that the CASA also recommended Child remain in her resource home and favored termination of parental rights. (*Id.* at 110.)

Thus, as confirmed by the record, termination of Father's parental rights serves Child's developmental, physical, and emotional needs and welfare and was proper pursuant to Section 2511(b). While Father may profess to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id.* at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856 (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1) and (b).

Decree affirmed.

Dubow, J. joins this Memorandum.

Shogan, J. concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/20/2018